**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| AMY SUPLEE,<br><br>*Plaintiff*,<br><br>v.<br><br>LIBERTY FEDERAL CREDIT UNION, *et al.*,<br><br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:25-cv-343<br><br>Judge Travis R. McDonough<br><br>Magistrate Judge Christopher H. Steger |

---

**MEMORANDUM AND ORDER**

---

Before the Court is Plaintiff Amy Suplee's motion to disqualify Michael Kuebler and Kuebler & Associates, PLLC, together with Matthew Presley and Buddy Presley, from representing Defendant Matthew Bryse Paul Gerenday in this action (Doc. 69). For the reasons stated herein, Plaintiff's motion will be **DENIED**.

**I. BACKGROUND**

This action involves a dispute stemming from a residential construction project. (*See* Doc. 47.) On October 15, 2024, Plaintiff entered into a "Residential Construction Loan Agreement" ("the Agreement") with Liberty Federal Credit Union ("Liberty") to finance the construction of a residence. (*Id.* at 2.) Plaintiff engaged Defendant Matthew Bryse Paul Gerenday ("Gerenday")[1] as her contractor for the construction of the residence. (*Id.* at 2, 38.) Plaintiff alleges that, following a disbursement under the Agreement, Gerenday "diverted the

[1] Gerenday was doing business as "Building New Beginnings, LLC." (Doc. 47, at 2, 38.)

funds for purposes unrelated to [her] project" and ultimately abandoned the project by December 23, 2024. (*Id.* at 9.)

Below is a summary of the dates and events relevant to the motion now before the Court:

- Plaintiff met with attorney Michael Kuebler "on multiple occasions in July, August, and September 2024," and submitted and personally brought documents for Mr. Kuebler's review. (Doc. 69, at 2.) These discussions concerned a "legal issue involving alleged mold conditions associated with office space [Plaintiff] was leasing for her business" and the "purpose of [the] consultations was to discuss the mold-related matter." (Doc. 72-1, at 1 (Kuebler Affidavit).)

- During a meeting in September 2024, Mr. Kuebler asked Plaintiff questions concerning her planned residential construction that is now the subject matter of this action. (Doc. 69, at 2.) Specifically, Plaintiff asserts that Mr. Kuebler asked her who her builder was, how she had located and chosen him, and whether he was among the area's preferred builders. (*Id.*) Plaintiff states that she answered these questions and provided additional general information about the project, including information about her efforts to receive her general-contractor license. (*Id.* at 2–3.) Mr. Kuebler testifies that he did not provide Plaintiff with legal advice concerning her construction project and "did not undertake to represent" Plaintiff concerning the project. (Doc. 72-1, at 2.) Mr. Kuebler further testifies that this discussion concerning the residential construction project "generally concerned selecting contractors, [Plaintiff's] interest in obtaining her own contractor's license, and [his] general observation that [he] had previously encountered issues involving contractors associated with Jasper Highlands." (*Id.* at 1–2)

- Plaintiff entered into a Building Construction Agreement with Gerenday on September 22, 2024. (Doc. 47, at 9.)

- Plaintiff entered into the Agreement for financing of the residence construction on October 15, 2024. (Doc. 47, at 2.)

- Gerenday allegedly "abandoned the project" on or about December 23, 2024. (Doc. 47, at 9.)

- Plaintiff initiated this action on November 5, 2025. (Doc. 1.)

- Presley Law Firm, including Buddy Presley, Esq. and Matthew T.F. Presley, Esq. appeared as Gerenday's counsel in this matter. (*See* Doc. 16.)

- On September 3, 2026, Gerenday's counsel notified the Court that Kuebler & Associates, PLLC, was substituted as the counsel of record for Gerenday in place of Presley Law Firm. (Doc. 66.)

On September 8, 2026, Plaintiff filed the present motion to disqualify counsel (Doc. 69), which is now ripe for the Court's review.

## II. STANDARD OF LAW

"Although a district court possesses inherent authority to disqualify an attorney to aid the fair administration of justice, it is not to use this remedy lightly; that is, courts must remain sensitive to the parties' choice of counsel and weigh that interest against the public's interest in fair judicial process." *Barker v. Prof'l Educators*, No. 3:12-CV-0044, 2012 WL 1900920, at *3 (M.D. Tenn. May 23, 2012). A court must therefore "balance the competing public interests of requiring professional conduct by an attorney and permitting a party to retain its chosen counsel." *Am.'s Collectibles Network, Inc. v. Sterling Com. Am. Inc.*, No. 3:09-CV-143, 2017 WL 2598491, at *3 (E.D. Tenn. Feb. 8, 2017). Courts must view a motion for disqualification with "extreme caution" because of its proclivity to "be misused as a harassment technique." *Id.*

"[T]he moving party bears the burden of establishing the need for disqualification." *Nilavar v. Mercy Health System-Western Ohio*, 143 F. Supp. 2d 909, 912 (S.D. Ohio 2001). "An evidentiary hearing is not necessary on every motion for disqualification, but a district court must conduct a 'factual inquiry' in a manner that will allow for appellate review." *Tenn. Bonding Co. v. Tenn. Ass'n of Pro. Bail Agents*, No. 3:24-cv-01325, 2025 WL 1921655, at *2 (M.D. Tenn. July 11, 2025) (quoting *Gen. Mill Supply Co. v. SCA Servs., Inc.*, 697 F.2d 704, 710 (6th Cir. 1982)).[2]

A district court derives its power to disqualify attorneys from two sources: (1) the local rules of the court in which they appear and (2) federal law. *Bartech Indus., Inc. v. Int'l Baking*

[2] Considering neither party requests a hearing, the affidavit of Michael Kuebler submitted by Gerenday's counsel, and the lack of factual disputes, the Court finds that an adequate factual basis exists for the Court to decide this matter, and no hearing is necessary.

*Co., Inc.*, 910 F. Supp. 388, 392 (E.D. Tenn. 1996). Under this district's local rules, attorneys appearing before this Court are governed by the Tennessee Rules of Professional Conduct ("Rules"). *See* E.D. Tenn. L.R. 83.6. As for federal law, the Sixth Circuit Court of Appeals established a three-part test for attorney disqualification:

> (1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification.

*Dana Corp. v. Blue Cross & Blue Shield Mut.*, 900 F.2d 882, 889 (6th Cir. 1990).

Following *Dana*, district courts generally look to the Rules when determining whether an attorney should be disqualified based on a conflict of interest. *Seaman Corp. v. Zurich Am. Ins. Co.*, 643 F. Supp. 3d. 790, 795 (N.D. Ohio 2022). With regard to former clients, Rule 1.9(a) of the Rules provides,

> [a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Tenn. Sup. Ct. R. 8, RPC 1.9(a). The scope of a "matter" "depends on the facts of a particular situation or transaction," and matters are "substantially related . . . if there is a substantial risk that confidential factual information that would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter, unless that information has become generally known." *Id.* at cmts. 2, 3.

With regard to prospective clients, the Rules provide,

> [a] A person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
>
> [b] Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information, except as RPC 1.9 would permit with respect to information of a former client.

> [c] A lawyer subject to paragraph [b] shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that prospective client in the matter . . . If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter . . .

Tenn. Sup. Ct. R. 8, RPC 1.18(a)–(c). Thus, a motion to disqualify under a prospective client relationship "should be analyzed the same as a motion to disqualify pursuant to a former client relationship, with the additional requirement that the lawyer receive information that could be 'significantly harmful,' rather than merely confidential." *Factory Mut. Ins. Co. v. APComPower, Inc.*, 662 F. Supp. 2d 896, 900 (W.D. Mich. 2009) (analyzing the differences between Model Rule of Professional Conduct rules 1.9 and 1.18).

Whether a conflict is imputed to a law firm is governed by Tennessee Rule 1.10, which states that:

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by RPCs 1.7, 1.9 or 2.2, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

Tenn. Sup. Ct. R. 8, RPC 1.10(a). When an individual attorney is disqualified from representation, their firm may be disqualified by imputation. *Eon Streams, Inc. v. Clear Channel Commc'ns, Inc.*, No. 3:05-cv-578, 2007 WL 954181, at *7 (E.D. Tenn. Mar. 27, 2007).

## III. ANALYSIS

Plaintiff argues that Gerenday's counsel should be disqualified by imputation through Rule 1.10 under either Rule 1.9, protecting former clients, and, if no former attorney-client relationship is found, under Rule 1.18, protecting prospective clients.[3] (*See* Doc. 69.)

[3] Although the parties only mention the Tennessee Rules of Professional Conduct in their briefs, not the *Dana* standard, the Court will apply the *Dana* standard because "the effect of using the

### A. Disqualification under *Dana*

#### *i. Past Attorney-Client Relationship*

When determining whether an attorney-client relationship was formed, courts must "focus on what a party in the given circumstances would reasonably have inferred because in legal theory the attorney-client relationship can be formed only by contract, express or implied." *Dellinger v. Colson*, No. 3:09-CV-404, 2013 WL 2635501, at *8 (E.D. Tenn. June 12, 2013) (quoting *Sky Valley Ltd. v. ATX Sky Valley, Ltd.*, 150 F.R.D. 648, 651 (N.D. Cal. 1993) (citation modified). For there to be an attorney-client relationship, "a party must show that (1) it submitted confidential information to a lawyer and (2) it did so with the reasonable belief that the lawyer was acting as the party's attorney." *Bartech Indus., Inc. v. Int'l Baking Co., Inc.*, 910 F. Supp. 388, 393 (E.D. Tenn. 1996) (quoting *Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1384 (10th Cir. 1994)).

Mr. Kuebler avers that Plaintiff met with him to discuss "a legal issue involving alleged mold conditions associated with office space she was leasing for her business." (Doc. 72-1, at 1.) Plaintiff states in her motion that she consulted with Mr. Kuebler "for the purpose of obtaining individualized legal advice," that she was charged a consultation fee for these consultations, and that she provided materials for Mr. Kuebler's review. (Doc. 69, at 2.) From these statements, Plaintiff has met her burden of showing that she submitted confidential information to Mr. Kuebler and that she did so with the reasonable belief that he was acting as her attorney. *See Bartech Indus.*, 910 F. Supp. at 393. An attorney-client relationship between

---

[Tennessee] Rules of Professional Conduct in place of or in conjunction with [the Sixth Circuit's] *Dana* analysis is minimal at best because the relevant [Tennessee] Rule is essentially the same." *Bowers v. Ophthalmology Grp.*, 733 F.3d 647, 651 (6th Cir. 2013); *see Allied World Specialty Ins. Co. v. Bluecross Blueshield of Tenn., Inc.*, No. 1:14-CV-196, 2016 WL 11500218, at *3 (E.D. Tenn. Apr. 14, 2016).

Plaintiff and Mr. Kuebler was created by their 2024 consultations and the first prong of *Dana* is met. *See Dana* 900 F.2d 882, 889.

***ii. Whether Subject Matter of Relationships is Substantially Related***

When assessing whether the attorney-client relationship is substantially related to the present matter, courts "must look to the general type of information that the potentially conflicted lawyer would have been exposed to in a normal or typical representation of the type that occurred with the now-adverse client." *Bowers v. Ophthalmology Grp.*, 733 F.3d 647, 652 (6th Cir. 2013). For a matter to be substantially related, it must "involve the same transaction or legal dispute" or there must otherwise be "a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." *Id.*

The events underlying the present dispute with Gerenday had not yet occurred when Mr. Kuebler represented Plaintiff. (Doc. 69, at 7.) The parties do not dispute, however, that some facts relating to the present suit were discussed during Plaintiff's meetings with Mr. Kuebler—namely, Plaintiff's plans to construct a residence in Jasper, her search for a contractor, and her plans to obtain a contractor's license. (*Id.*) But Plaintiff and Mr. Kuebler's consultations hinged on a different legal issue and different underlying facts: mold in an office she leased for her business. (Doc. 72, at 1.) The mold issue and the current matter involve separate "transactions or legal disputes" because here the dispute surrounds the future construction of a residence, whereas the mold consultations involved Plaintiff's leased business space. (Doc. 69, at 7; Doc. 72, at 1); *see Educ. Broadband Corp. v. Rural Connect, LLC*, No. 1:24-CV-01206, 2025 WL 2946166, at *5 (W.D. Tenn. Oct. 25, 2025) (analyzing the test for whether a matter is "distinct" from the present matter).

Further, the overlapping subject matter Plaintiff asserts she discussed with Mr. Kuebler is general in nature and, in fact, mirrors the facts set forth in the amended complaint. *Compare* (Doc. 69, at 2–3 (describing the September 2024 discussion with Mr. Kuebler about the construction project)) *with* (Doc. 47, at 9 (stating that Plaintiff hired Gerenday in September, 2024 for the construction of a residence)). It is unclear how a general discussion of Plaintiff's plans to construct a residence, how she located and selected Gerenday, and her plans to obtain a general-contractor's license would "materially advance" Gerenday's position in the present matter. It is similarly unclear how "confidential information as would normally have been obtained in the prior representation" involving the mold issue would materially advance Gerenday's position in the current matter, especially considering the events underlying the present dispute had not yet taken place. *Educ. Broadband Corp.*, 2025 WL 2946166, at *5 (quoting *Bowers*, 733 F.3d at 652). Therefore, the subject matter of the relationships is not substantially related, and the second prong of *Dana* is not satisfied. *See Dana*, 900 F.2d, at 889; *see Bartech*, 910 F. Supp. at 393–94 (finding the second prong unsatisfied when the conversation at issue "took place several months before [the] action was filed," and therefore "must have been exploratory and anticipatory in nature").

***iii. Whether Confidential Information was Shared***

A former client need not specify the confidential information that was revealed in the prior representation. *Educ. Broadband Corp.*, 2025 WL 2946166, at *4. Determining whether confidential information was shared hinges on the similarities between the matters, and this analysis "essentially makes the final two prongs of *Dana Corp* interdependent on one another." *Hometown Pizza, Inc. v. Hometown Pizza II, LLC*, No. 3:22-CV-20, 2022 WL 2392642, at *2 (W.D. Ky. July 1, 2022). As a general guideline, however, Sixth Circuit courts have noted that

when an attorney was merely exposed to "general information regarding business practices or procedures," there is likely no confidentiality concern mandating disqualification. *See Securedata, Inc. v. Anytime Pictures, LLC*, No. 1:20-CV-2491, 2022 WL 22873033, at *4 (N.D. Ohio, Mar. 29, 2022).

Since the subject matter of the mold consultations between Plaintiff and Mr. Kuebler are not substantially related to her present claims against Gerenday, as discussed above, it is unlikely at the outset that Plaintiff shared confidential information regarding the present matter. *See Hometown Pizza, Inc.*, 2022 WL 2392642, at *2. Further, since the events underlying the present matter had not yet occurred, it would have been difficult, if not impossible, for Plaintiff to have shared confidential information regarding the present matter because such information did not yet exist. (Doc. 69, at 3.) The discussion regarding the construction project also appears to constitute "general information regarding business practices or procedures," namely Plaintiff's contractor-license plans and residence-construction plans, which generally do not mandate disqualification. *See Securedata, Inc.*, 2022 WL 22873033, at *4. Although Plaintiff shared confidential information with Mr. Kuebler in 2024, therefore, the matters were not substantially related, and thus the sharing of confidential information with Mr. Kuebler is not disqualifying in the present matter. *See, e.g.*, *Hometown Pizza, Inc.*, 2022 WL 2392642, at *2; *Securedata, Inc. v. Anytime Pictures, LLC*, 2022 WL 22873033, at *4; *Bartech*, 910 F. Supp. at 394. Accordingly, the third prong of *Dana* is not satisfied. *Dana*, 900 F.2d, at 889.

Since the *Dana* prongs are not satisfied, Mr. Kuebler has not violated Rule 1.9, he is not prohibited from representing Plaintiff, and this conflict cannot be imputed to other lawyers in his firm. Tenn. Sup. Ct. R. 8, RPC 1.18(c); *see Woods v. Mich. Dep't of Corr.*, No. 15-10324, 2015 WL 7075922, at *4 (E.D. Mich. Nov. 13, 2015).

### B. Rule 1.18

Rule 1.18 protects information disclosed to a lawyer by a prospective client. *See* Tenn. Sup. Ct. R. 8, RPC 1.18(a)–(b). A lawyer who obtained confidential information from a prospective client "shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that prospective client in the matter." Tenn. Sup. Ct. R. 8, RPC 1.18(c). If a lawyer is disqualified from representing a client under Rule 1.18(c), the disqualification may be imputed to other members of the firm. *Id.*

As discussed above, the Court has found that an attorney-client relationship was created by Plaintiff's consultations with Mr. Kuebler in 2024. *See supra* Section III.A.i. But Plaintiff has not shown that any information Plaintiff disclosed to Mr. Kuebler could be considered "significantly harmful" to her in the present matter. *Factory Mut. Ins. Co.*, 662 F. Supp. 2d at 900. The events giving rise to Plaintiff's claim against Gerenday had not yet occurred at the time of her discussions with Mr. Kuebler, and the information she shared with him was general in nature. *See supra* Section II.A; (*see generally* Docs. 69, 47.) As to Gerenday's counsel conducting a deposition of Plaintiff from Kuebler & Associates, PLLC's offices, the use of this space, although potentially uncomfortable for Plaintiff, does not show Gerenday's counsel received information in a "substantially related matter" that could be "significantly harmful" to Plaintiff in this case. (Doc. 69, at 7); Tenn. Sup. Ct. R. 8, RPC 1.18(c). As to Mr. Kuebler questioning Plaintiff during her September 2024 in-person consultation about the "Jasper Highlands construction project, the identity and selection of her builder, and her own construction-related background," there is no indication that any of this information could be "significantly harmful" to Plaintiff in this case. (Doc. 69, at 7); Tenn. Sup. Ct. R. 8, RPC

1.18(c). Further, the information regarding Plaintiff's construction-related background and selection of Gerenday was placed in the amended complaint, and thus Plaintiff herself placed it in the public record. *See* (Doc. 47, at 10); *Dealer Trade Network Holdco, LLC v. Lynch*, 2023 WL 7181289, at *5 (W.D. Ky. Sept. 6, 2023) ("Even if the information were at some point confidential, it is now all on the public record and can no longer be considered such."). It therefore does not appear that any of the information Plaintiff shared with Mr. Kuebler was "significantly harmful" to Plaintiff's current case, and accordingly Mr. Kuebler has not violated Rule 1.18. *See McCool v. Operative Plasterers' & Cement Masons' Int'l Ass'n of U.S. & Canada, AFL-CIO*, No. 13-13614, 2014 WL 635797, at *7 (E.D. Mich. Feb. 18, 2014) (noting that the "significantly harmful" standard under Rule 1.18 is stricter than the "merely confidential" standard under the *Dana* test). Since Mr. Kuebler has not violated Rule 1.18, he is not prohibited from representing Plaintiff, and thus this conflict cannot be imputed to other lawyers in his firm, Kuebler & Associates. Tenn. Sup. Ct. R. 8, RPC 1.18(c).[4]

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's motion to disqualify Gerenday's counsel (Doc. 69) is **DENIED**.

**SO ORDERED.**

*/s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

[4] While it does not appear that the confidences disclosed to Mr. Kuebler would disqualify him or his firm, and therefore does not disqualify Gerenday's counsel here, Mr. Kuebler remains bound by the lawyer's essential duty of confidentiality for any confidential information he received from or about Plaintiff during his representation of Plaintiff. *See, e.g.*, Tenn. Sup. Ct. R. 8, RPC 1.6, cmt. 2 ("A fundamental principle in the client-lawyer relationship is that, in the absence of the client's informed consent, the lawyer must not reveal information relating to the representation.").